IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CARL C. CLARK,

                Plaintiff,                      3:13-cv-01807-PK

v.                                       OPINION AND ORDER

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

———————————————

PAPAK, Magistrate Judge:

      Plaintiff Carl C. Clark filed this action on October 10, 2013, seeking judicial review of

the Commissioner of Social Security's ("Commissioner") final decision denying his application

for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles

II and XVI of the Social Security Act (the "Act"). This court has jurisdiction over the matter

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Page 1 - OPINION AND ORDER

Clark argues that the Administrative Law Judge (ALJ) erroneously rejected medical evidence and failed to properly accord weight to his Global Assessment Functioning (GAF) scores, therefore rendering the Commissioner's final decision contrary to law and unsupported by substantial evidence. I have considered the parties' briefs and all of the evidence in the administrative record. For the reasons set forth below, the Commissioner's final decision is affirmed.

## PROCEDURAL BACKGROUND

Clark protectively applied for Social Security Child's Disability benefits on September 24, 2009. He then filed for SSI on October 8, 2009. After his application was denied initially and upon reconsideration, Clark requested a hearing before an ALJ. On April 20, 2012, ALJ Rudolph M. Murgo held a hearing, during which Clark and a vocational expert ("VE") testified. Clark was represented by counsel at the hearing. On August 8, 2012 , the ALJ issued a decision finding Clark not disabled within the meaning of the Act. After the Appeals Council denied review on September 25, 2013, Clark filed a complaint in this court.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. § 416.920(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step

does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. § 416.920(a)(4)(i). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 416.920(a)(4)(i), 416.920(b). Otherwise, the evaluation will proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140-41; *see also* 20 C.F.R. § 416.920(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 416.920(c). The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); *see also Bowen*, 482 U.S. at 141. If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c). Nevertheless, it is well established that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen*, 482 U.S. at 153-54). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual['])s ability to work." *Id.* (quoting SSR No. 85-28).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at

which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d). If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, between the third and the fourth steps the ALJ is required to assess the claimant's residual functional capacity (RFC), based on all of the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. § 416.920(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related physical and/or mental activities on a regular and continuing basis,[1] despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. § 416.945(a); *see also* SSR No. 96-8p.

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 416.920(a)(4). If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f). In the event the claimant is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof shifts, for the first time, to the Commissioner.

---

[1] "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR No. 96-8p.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether a person with those characteristics and RFC could perform any jobs that exist in significant numbers in the national economy. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. If the Commissioner meets her burden to demonstrate the existence in significant numbers in the national economy of jobs capable of being performed by a person with the RFC assessed by the ALJ between the third and fourth steps of the five-step process, the claimant is found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. A claimant will be found entitled to benefits if the Commissioner fails to meet that burden at the fifth step. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g).

## SUMMARY OF ADMINISTRATIVE RECORD

Clark was born on November 20, 1990. Tr. 163.[2] He discontinued high school in the eleventh grade due to illness, difficulty with focus, and family relocation. Tr. 14. At the time of the hearing, Clark was studying for his General Education Diploma (GED). Tr. 34. Clark has no vocational history. Tr. 414.

The earliest documentation in the administrative record of Clark's mental impairment is an assessment of childhood attention deficit hyperactivity disorder (ADHD), which led Clark to receive special educational services in written languages and math. Tr. 272, 275. While in kindergarten, he was noted to have "severe levels of inattention, impulsivity, and hyperactive

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as docket no. 10.

behavior," leading to interferences with his education. Tr. 262.

In May 2000, Clark was evaluated by Dr. Michael Hohn to determine his eligibility for continued special education services, which he had been receiving since 1997. Tr. 264. Dr. Hohn found that Clark fell within the average range for overall cognitive functioning, short-term and working memory, as well as visual processing speed. *Id.* Dr. Hohn noted that Clark's mother had assessed Clark, using a behavioral rating scale, as having difficulty with a wide range of behaviors. *Id.* Dr. Hohn noted that the listed behaviors were consistent with ADHD. *Id.*

In December 2007, Clark visited David Allen, a physician's assistant, regarding an upper-respiratory infection. Allen reported that Clark had a past diagnosis of ADHD, that Clark's mother did not believe he had ADHD, and that Clark had not taken his prescribed Ritalin for an extensive period of time due to perceived side effects. Tr. 381.

In January 2008, Clark again visited David Allen. He requested a refill on Zoloft, which Allen reported Clark began taking for anxiety in 2004. Tr. 375. Clark admitted to Allen that he had cut his prescribed Zoloft dosage because it made him "crazy," explaining that he would become angry with his older brother when his brother became intoxicated to the point of being verbally abusive to Clark. *Id.* Allen diagnosed Clark with anxiety, possible bipolar disorder, possible personality disorder, and exercise-induced asthma, for which he prescribed Singulair. *Id.* Clark was seen the following month for the results of bipolar testing conducted during his prior visit. Tr. 372. Those results returned negative. During that visit, Clark reported a single, ambiguous "outbreak" during which he reported requiring Xanax. *Id.*

Throughout 2008 and 2009, the administrative record includes evidence of few medical visits, including visits for a knee injury and an ankle sprain. Tr. 363–64, 385.

In April 2010, Clark was referred to Dr. Ronald Duvall by the Disability Determination Services in an effort to determine Clark's eligibility for SSI and DIB. Tr. 412. Dr. Duvall conducted a 90 minute interview, during which he observed and reviewed Clark's current functioning, psychosocial history, and mental status. Duvall determined that Clark was dressed well; showed no signs of physical restriction or discomfort; made unusual comments; showed impertinence and mocking behavior; had a wide-ranged affect; showed a generally positive mood; had normal flow of thoughts; and was easily distracted with a "spotty" level of concentration. Tr. 412. Clark told Dr. Duvall that he spent roughly 20 hours per week on class work related to his GED. Tr. 413. Clark's IQ was assessed at an average range. Tr. 412. Dr. Duvall diagnosed Clark with ADHD (moderate-severe), dysthymia (mild-moderate), and an unspecified personality disorder. Tr. 416.

In November 2011, Clark began to receive care from Dr. Erling Oskenholt. Dr. Oskenholt noted that Clark denied many general symptoms. Tr. 452 (collecting symptoms). Dr. Oskenholt assessed Clark with bipolar disorder unspecified and depressive disorder unclassified. Tr. 453.

In April 2012, Clark was referred by his counsel to Dr. Rory Richardson for a neuropsychological assessment. Tr. 454. Dr. Richardson noted that Clark's hygiene was within acceptable norms and that his posture and a psychomotor movements were normal. Tr. 460. Dr. Richardson found that Clark's eye contact, facial expressions, and speech were unaffected. *Id.* Dr. Richardson assessed Clark with ADHD, combined type; unspecified mood disorder; partially compensated for reading disoder; orthographic dysgraphia, a writing disorder; average range IQ; mathematics disorder; rule out autism spectrum disorders; rule out developmental dyspraxia;

mixed personality disorder features; and asthma. Tr. 67. Dr. Richardson reported the results of a

Multiphasic Personal Inventory test and noted that "[i]n reviewing response pattern, it is very

likely that [Clark] endorsed the items inconsistently," suggesting "some amplification of the

symptoms is possible . . . ." Tr. 465. Dr. Richardson further reported that Clark's diagnosed

conditions present inattentive symptoms resulting in careless mistakes, a lack of close attention,

difficulty sustaining attention, difficulty with listening, and forgetfulness. *Id.*

### SUMMARY OF ALJ FINDINGS

At the first step of the five-step sequential evaluation process, the ALJ found that Clark

had not engaged in substantial gainful activity. Tr. 11. At the second step, the ALJ found that

Clark had the following severe impairments: organic mental disorder, ADHD, affective

dysthymic disorder, asthma, and a personality disorder. Tr. 12. Because Clark's impairments

were deemed severe, the ALJ properly proceeded to the third step of the analysis. *Id.*

At the third step, the ALJ found that none of Clark's impairments met or equaled any of

the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1. Tr. 12. The ALJ therefore

conducted an assessment of Clark's RFC. The ALJ found that, during the relevant adjudication

period, Clark could:

> . . . perform a full range of works at all exertional levels but . . . is
> limited to unskilled [Specific Vocational Preparation] work . . . [and]
> needs to avoid concentrated exposure to fumes, dusts, and odors.

Tr. 14.

At the fourth step of the five-step process, the ALJ found that Clark had no past relevant

work. Tr. 21. At step five, the ALJ determined that a person with Clark's functional limitations

could perform jobs that exist in significant numbers in the national economy. Tr. 22. Based on

his step-five findings, the ALJ concluded that Clark was not disabled under the Act. *Id.*

## LEGAL STANDARD

A reviewing court must affirm an ALJ's decision if the ALJ applied proper legal standards and his or her findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

The court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The court may not substitute its judgment for that of the Commissioner. *See id.* (citing *Robbins*, 466 F.3d at 882); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Moreover, the court may not rely upon its own independent findings of fact in determining whether the ALJ's findings are supported by substantial evidence of record. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citing *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)).

## ANALYSIS

Clark argues that the ALJ erred because: (1) he did not properly consider the medical evidence of record and therefore improperly assessed Clark's RFC, and (2) failed to properly accord weight to the GAF test scores. I will analyze these arguments separately.

### I.    Medical Evidence of Record

There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In considering medical evidence, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). More weight is afforded to "opinions that are explained than to those that are not, . . . and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons for doing so. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 830–31). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Id.*

### A.    The ALJ's Interpretation of Dr. Duvall's Medical Opinion

Clark first argues that the ALJ arbitrarily concluded that certain elements of Dr. Duvall's assessment of Clark do not preclude Clark from performing SVP 1 unskilled work. Pl.'s Br., #11, 8. To support this argument, Clark refers to test results from the assessment that are consistent with the theory that Clark's executive functions may be impaired by his ADHD. *Id.* at

7; Tr. 415. Clark specifically refers to the Wide Range Achievement Testing conducted by Dr. Duvall, which placed Clark's math and reading capabilities in the average range and suggested inattention and impulsivity leading to Clark's inability to stay focused on certain tasks and follow with intact working memory processes. Pl.'s Br., #11, 8; *See* Tr. 417.

Although Dr. Duvall included several of Clark's limitations in his assessment, his conclusion was consistent with the ALJ's ultimate findings and interpretation of the medical evidence of record. Based on his observations and a series of psychological tests, Dr. Duvall reported that Clark had attentional problems potentially alleviated by a proper medication regimen, but that Clark "should be able to find some work which did not require complex and lengthy memorization of procedures." Tr. 417. The ALJ is responsible for reviewing the evidence and determining the weight to be given to opinions from medical practitioners. *See* SSR 96–6p. Here, the ALJ gave "great weight to the opinion of Dr. Duvall, because it is consistent with the claimant's treatment records and psychological testing results that show the claimant suffers significant attention and concentration limitations stemming from ADHD, however, his limitations do not prevent him from performing . . . unskilled work." Tr. 18. Although the ALJ's findings regarding Clark's disability were consistent with those of Dr. Duvall, Clark nonetheless contends that the ALJ erred by failing to account for those aspects of Dr. Duvall's assessment that would suggest Clark experiences more limitations than the ALJ ultimately found. This argument fails.

Numerous courts have held that an ALJ may not substitute his own medical judgment for that of a competent medical expert. *See, e.g.*, Gonzalez Perez v. HHS, 812 F.2d 747, 749 (1st Cir. 1987); *see also* Rohan v. Chater, 98 F.3d 966 (7th Cir. 1996). Where, as here, the ALJ

accepted and provided "great weight" to Dr. Duvall's opinion, the ALJ cannot properly ignore conclusions therein for an interpretation of his own. Clark's argument to the contrary cannot be sustained. Thus, the ALJ was not erroneous in his assignment of weight to Dr. Duvall's medical opinion or his interpretation thereof.

### B.    The ALJ's Partial Rejection of Dr. Richardson's Medical Opinion

Next, Clark argues that the ALJ improperly accorded only "some weight" to Dr. Richardson's opinion. Pl.'s Br., #11, 8. Clark argues two primary errors in the ALJ's reasoning for doing so: (1) the ALJ's reasons for not fully crediting Dr. Richardson's opinion regarding concentration, persistence, and social limitations are not supported by substantial evidence; and (2) the ALJ's characterization of Dr. Richardson's diagnosis of scotopic sensitivity syndrome as "controversial" is not supported by substantial evidence. *Id.* at 8–9.

The ALJ found Dr. Richardson's medical findings inconsistent with other evidence of record. Specifically, the ALJ determined that Dr. Richardson's findings that Clark had severe limitations in social functioning are inconsistent with the opinion provided by Dr. Duvall, who opined that Clark is capable of working in a limited capacity. Tr. 417. An ALJ must provide specific and legitimate reasons supported by substantial evidence in order to reject a contradicted medical opinion. *Bayliss v. Barnhart*, 427 F.3d at 1216. I will analyze each issue in turn.

### 1.    Concentration and Persistence Limitations

First, the ALJ cited general inconsistencies in Dr. Richardson's findings regarding Clark's severely limited concentration and persistence, those inconsistencies include Clark's reported reading and study habits. Tr. 18. The ALJ relied on Clark's time spent throughout the week on classwork related to his pursuit of a GED, amounting to approximately 20 hours

according to Clark's testimony. Tr. 18, 413. The ALJ also took into account Clark's reading habits, which include "mystery stories, crime stories, fantasy stories, science fiction stories," according to Clark's testimony provided at the hearing. Tr. 45. These reasons, listed by the ALJ, are legitimate bases for discounting Dr. Richardson's opinion that Clark had a severe impairment in maintaining concentration and persistence, and the record testimony and other evidence support the ALJ's conclusion. *See* Tr. 18, 45, 188. Clark contends that the time requirement of these tasks constitutes an insignificant fraction of his waking hours, roughly calculated by Clark, thus invalidating the ALJ's reliance on these reasons.[3] Clark also argues that the ALJ speculated as to the amount of time Clark spends reading. Pl.'s Br., #11, 10. Clark interprets this evidence to be insufficient to show significant time spent reading or studying throughout the week. Clark's characterization is simply an interpretation of the evidence, rather than a flaw in the ALJ's reasoning. *See Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) ("We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation") (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)).

Because the ALJ provide reasons for discounting Dr. Richardson's opinion that are specific and legitimate and supported by substantial evidence in the record, the ALJ did not err in not fully crediting Dr. Richardson's opinion on concentration and persistence.

---

[3] Clark's calculation of waking hours relies on the assumption of a "full 'waking hours' week," but fails to account for Clark's testimony at the administrative hearing on this subject, in which he states that his "sleeping schedule's erratic" and he wakes "by at least 11:30 to noon." Tr. 43.

2.    **Social Limitations**

Second, the ALJ found Dr. Richardson's opinion regarding Clark's severely limited

social interactions inconsistent with the evidence of record. The ALJ further explained his

limited weight assignment, noting that Clark "has many friends on Facebook, and he visits with

friends in person and through the internet," which contradicts Dr. Richardson's opinion. Tr. 18.

Additionally, the ALJ rejected Dr. Richardson's findings that Clark is unable to get along with

coworkers or peers without exhibiting behavioral extremes. Tr. 18. The ALJ opined that "[t]he

record does not show the claimant has a significant problem with anger outbursts other than with

his family when his older brother is drinking and verbally abusive" and the ALJ referred to a lack

of evidence in the administrative record showing outbursts or inappropriate social behavior with

fellow students, teachers, medical providers, or staff. Tr. 18–19.

Clark argues that the ALJ erred in considering this aspect of Dr. Richardson's opinion

because Clark's Facebook activity is not in-person, is infrequent, and is done at a time of his

choosing. Pl.'s Br., 11, 11–12. Clark further argues that his visits with friends are limited. *Id.*

As the ALJ noted, however, Clark's testimony reveals regular visitation with multiple friends in

his home, during which Clark and his friends "talk, look at comic books, [and] trade stories about

what's happened to [them] recently." Tr. 48. Likewise, Clark explained that he engages in

conversations with other friends from his hometown via Facebook, exchanges letters with a pen

pal, and participated in an awareness initiative with an online community in support of a petition

to reinstate a canceled video game project. Tr. 46–48. Medical opinion evidence may be

discounted if it conflicts with other evidence of a claimant's ability to function, such as reported

daily activities. *See Morgan v. Commissioner of the Social Sec. Admin.*, 169 F.3d 595, 601,

601–02 (9th Cir. 1999). These daily activities, evinced by Clark's testimony, belie Dr.

Richardson's findings as to Clark's social limitations. Because he provided the above legitimate

reasons that are supported by substantial evidence in the record, I find that the ALJ did not err in

finding that these activities and the evidence of record operate to contradict Dr. Richardson's

opinion regarding Clark's severe social limitations and likeliness to exhibit emotional extremes.

### 3.    Irlen Syndrome

Third, Clark argues that the ALJ erred in partially discounting Dr. Richardson's opinion

due its reliance on "the controversial diagnosis of a scotopic sensitivity syndrome," or Irlen

Syndrome, a physiological condition relating to the reaction of the eyes and the central nervous

system. Tr. 19. The ALJ opined that Irlen Syndrome "is not a universally accepted diagnosis

among medical associations in the United States today." Tr. 19. Clark argues that no evidence

in the record supports the ALJ's characterization of Irlen Syndrome, and he points to Dr.

Richardson's diagnosis of this syndrome and subsequent documentation of that diagnosis by Dr.

John Berzins, an Ophthalmologist, to counter the ALJ's statement regarding Irlen Syndrome's

"controversial" status. Pl.'s Br., #11, 13.

I agree with Clark that the characterization of Irlen Syndrome as controversial, standing

alone, is insufficient to discount Dr. Richardson's opinion. Here, however, there was more. The

ALJ actually determined in his Step Two findings that Clark does not suffer from Irlen Syndrome

based on Dr. Berzins assessment of Clark. Tr. 12. While Clark is correct that Dr. Berzins

initially acknowledged Dr. Richardson's diagnosis, Dr. Berzins subsequently reported, and the

ALJ noted, that he did "not see any reason for disability as far as [Clark's] eyes are concerned."

Tr. 12 (citing Tr. 492). Dr. Berzins concluded that Clark simply requires glasses. *Id.* Further,

Page 15 - OPINION AND ORDER

the ALJ noted in his Step Two findings that "Irlen Syndrome is not recognized as a homogenous condition by the American Academy of Pediatrics or the American Optometric Association." Tr. 12. Clark correctly contends that there is no evidence in the record that supports this finding, and he goes on to argue, without legal support, that his due process rights are violated by the fact that the ALJ conducted an independent Google search and then inserted information, ostensibly related to that search, into his ultimate opinion. Pl.'s Br., #11, 13–14 (citing Tr. 63). Although there exists no evidence in the record of Irlen Syndrome's controversiality aside from the ALJ's statement to that effect, the ALJ's Step Two findings reveal that Clark was shown to have no ocular disability after the ALJ ordered an eye examination to supplement his own admitted lack of knowledge on the topic of Irlen Syndrome. Tr. 12, 63.

To the extent the ALJ erred in characterizing Irlen Syndrome as controversial when explaining his reasons for rejecting Dr. Richardson's opinion, that error is harmless. An ALJ's error may be harmless when it does not materially impact the ALJ's ultimate decision. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195–97 (9th Cir. 2004). Where circumstances of the case show a substantial likelihood of prejudice arising from the error, remand is appropriate. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2010). Where harmlessness is clear, however, remand for consideration arising from an error is not appropriate. *Id.* In the instant case, I find that the ALJ's error in providing unsupported information regarding Irlen Syndrome is harmless because it did not prejudice his ultimate decision. While Dr. Richardson includes several references to Irlen Syndrome in his assessment of Clark, he simply argues that its potential presence may contribute to Clark's disability. Tr. 468. As explained above, the ALJ recognized his limited scope of knowledge on the topic and ordered an eye

examination to evaluate of Dr. Richardson's conclusion. Tr. 63. The results of that examination disproved Dr. Richardson's assertions insofar as Dr. Berzins did not diagnose Clark with Irlen Syndrome, and instead declared his ocular health sound save for glasses. Tr. 492. Had the ALJ not searched Irlen Syndrome and opined as to its place in generally accepted diagnoses of the eye, Dr. Berzins' opinion as to Clark's eye health would persist and support the ALJ's ultimate findings on the subject of Irlen Syndrome and scotopic sensitivity.

As a final assertion of the ALJ's error in rejecting Dr. Richardson's medical opinion, Clark alleges that the ALJ failed to consider all of the evidence provided in that opinion. Pl.'s Br., #11, 16. An ALJ "need not discuss all evidence presented to her." *Everson v. Colvin*, 577 Fed. Appx. 743, 744 (9th Cir. 2014) (citing *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (per curiam)). Rather, an ALJ need only "summarize[] the facts and conflicting clinical evidence in detailed and thorough fashion, stating his interpretation and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). The ALJ amply fulfilled this requirement by providing a detailed description of Dr. Richardson's findings, summarizing the other medical evidence of record, and providing specific examples of inconsistencies between Dr. Richardson's opinion and the other medical evidence. Tr. 14–21.

For the above reasons, the ALJ's partial rejection of Dr. Richardson's opinion is supported by substantial evidence and was based on a permissible determination within the ALJ's province.

## II.    Rejection of Global Assessment of Functioning Test Scores

Clark also argues that the ALJ erred in rejecting the GAF test scores provided by Dr. Duvall and Dr. Richardson. GAF scores estimate "an individual's psychological, social, and

Page 17 - OPINION AND ORDER

occupational functioning" and are "used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).  While GAF scores "are not controlling and do not directly correlate to a finding of disability, they are relevant." *Skelton v. Comm'r*, 2014 WL 4162536 *19–20 (D. Or. Aug. 18, 2014).

The record reflects two internally inconsistent GAF scores attributed to Clark: (1) a score of 45 by Dr. Richardson, which reflects serious symptoms or impairments, and (2) a score of 50–55 by Dr. Duvall, which reflects moderate symptoms or impairments.  Tr. 416, 467; *see American Psychiatric Ass'n*, Diagnostic and Statistic Manual of Mental Disorders, DSM-IV-TR, 1994, 32.  The ALJ explained his reasons for according little weight to the two GAF scores. First, in his Step Three finding, the ALJ explained that GAF scores do not have a direct correlation to severity requirements in mental disorder listings under the Act.  Tr. 17 (citing 65 Fed. Reg. 50,746 (Aug. 21, 2000)).  Second, the ALJ noted that "a low GAF might reflect difficulties in a wide range of functional areas [while] the regulatory definition of disability focuses on occupational functioning."  Tr. 17.

As discussed above, the ALJ provided legally sufficient reasons for rejecting Dr. Richardson's opinion in light of conflicting medical evidence.  *See Tommasetti v. Astrue*, 533 F .3d 1035, 1041 (9th Cir. 2008).  Although the ALJ did not specifically mention Dr. Richardson's GAF rating, I find that the ALJ nevertheless considered Dr. Richardson's opinion thoroughly and provided sufficient reasons for rejecting it.  Here, the ALJ concluded that the record does not support serious symptoms or serious impairment in social, concentration, or occupational functioning, as indicated by a Dr. Richardson's assigned GAF scores.  Tr. 18.  Because the ALJ provided legally sufficient reasons for rejecting Dr. Richardson's opinion, he properly rejected

his assessment of Clark's GAF scores. *See* Morgan v. Comm'r, 169 F.3d 595, 601 (9th Cir. 1999).

**CONCLUSION**

Based on the foregoing, Clark fails to show that the ALJ erred in assigning weight to the medical evidence of record. The ALJ's decision is based on the record and the correct legal standards and is therefore AFFIRMED.

IT IS SO ORDERED.

Dated this 26th day of January, 2015.

Honorable Paul Papak
United States Magistrate Judge

Page 19 - OPINION AND ORDER